IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| GREGORY GEORGE, | ) |  |
| --- | --- | --- |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 19-cv-706 |
|  | ) |  |
| BROMWELL'S – THE FIREPLACE | ) |  |
| PEOPLE, LLC, *et al* | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

This products liability case arises from the explosion of a gas fireplace at plaintiff's home in the Bahamas. As a result of this explosion, plaintiff has sued the alleged manufacturers of the fireplace—Wolf Steel U.S.A., Inc. and Wolf Steel Ltd.—and the seller of the fireplace—Bromwell's – The Fireplace People, LLC, asserting a number of claims, including breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose. In addition, the seller seeks indemnification or contribution from the alleged manufacturers with respect to the seller's liability for any of plaintiff's claims. All three defendants filed motions to dismiss plaintiff's claims in the First Amended Complaint ("FAC"), and the alleged manufacturers filed a motion to dismiss the seller's cross-claim for indemnification or contribution. These motions were fully briefed and argued, and the motions to dismiss were denied in part and granted in part by the November 12, 2019 Order. More specifically, the November 12, 2019 Order noted that the denial of the motions to dismiss the breach of implied warranty counts and the granting of the motion to dismiss Bromwell's cross-claim merited more extensive discussion. This Memorandum Opinion provides that discussion.

### I.

As required by Rule 12(b)(6), Fed. R. Civ. P., plaintiff's well-pleaded allegations are

1

assumed to be true, and all facts are viewed in the light most favorable to plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The FAC contains the following relevant factual allegations:

- Plaintiff, a resident of Florida, purchased two identical Napoleon fireplaces for $25,265.00 from Bromwell's – The Fireplace People, LLC ("Bromwell's") on April 14, 2017 in Falls Church, Virginia. FAC ¶¶ 1, 10. The Napoleon fireplaces were manufactured by Wolf Steel U.S.A., Inc. and Wolf Steel Ltd. (collectively, the "Wolf Steel entities"). *Id.* at ¶ 5. Bromwell's is an authorized dealer of Wolf Steel's fireplaces. *Id.* The fireplaces came with an instruction manual issued by the Wolf Steel entities that contains an express lifetime limited warranty.[1] *Id.* at ¶ 11.

- In December 2017, one of the fireplaces was installed in the master bedroom (the "Bedroom Fireplace") and the other fireplace was installed in the library (the "Library Fireplace") of plaintiff's home in the Bahamas. Both the Bedroom Fireplace and the Library Fireplace were installed in accordance with the installation and operating instructions set forth in the instruction manual. *Id.* at ¶ 16.

- The two fireplaces burned with different flames. The Bedroom Fireplace burned with a solid, continuous flame that was blue/yellow, and the Library Fireplace burned with an intermittent flame that was orange/yellow. *Id.* at ¶ 17. The Bedroom Fireplace lit easier than the Library Fireplace, and the Library Fireplace's pilot made a ticking sound when lit. *Id.*

- Plaintiff, through his representatives, reported these issues with the Library Fireplace to Bromwell's. *Id.* at ¶ 18. After multiple telephone conversations with plaintiff's representatives in April 2018, Bromwell's informed plaintiff that Bromwell's thought the issue sounded relatively minor and that there could be something blocking the pilot light. *Id.* at ¶ 19.

- Plaintiff continued to use the fireplace. *Id.* at ¶ 20. On the morning of January 21, 2019, plaintiff and one of his house guests entered the library and decided to turn on the Library Fireplace. *Id.* at ¶ 22. About a minute after plaintiff attempted to start the Library Fireplace, the Library Fireplace exploded. *Id.* at ¶ 23.

- The explosion caused extensive property damage. *Id.* The hurricane proof Loewen windows and doors were shattered and cracked, and the library's furnishings were damaged or destroyed. *Id.* at ¶ 29. Plaintiff estimates that the known damage to his home is $750,000 to $1,000,000.[2] *Id.*

---

[1] Plaintiff attached the instruction manual to the FAC as Exhibit 2. Because the instruction manual was attached to plaintiff's FAC, it is considered part of the complaint. *See* Fed. R. Civ. P. 10(c) (a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

[2] Plaintiff also alleges that the property damage resulted in loss of the home's use and value.

2

- An examination of the Library Fireplace found that the explosion was caused by a leak within the Library Fireplace. Specifically, the examination found that the Library Fireplace's control valve was manufactured in such a way that when gas traveled into the Library Fireplace, a substantial amount of gas leaked out of the valve and filled the space between the back of the Library Fireplace and the wall in front of which the Library Fireplace was located. *Id.* at ¶ 24. The accumulation of gas due to the leak from the defectively manufactured control valve led to the explosion. *Id.*

- The FAC, filed on August 9, 2019, alleges claims of: (I) negligent manufacture against the Wolf Steel entities, (II) constructive fraud against all three defendants, (III) breach of an express warranty against the Wolf Steel entities, (IV) breach of the implied warranty of merchantability against all three defendants, (V) breach of an implied warranty of fitness for a particular purpose against all three defendants, (VI) violation of the Virginia Consumer Protection Act against all three defendants, and (VII) negligence for failure to warn against all three defendants.

## II.

The November 12, 2019 Order denied the Wolf Steel entities and Bromwell's motions to dismiss Count IV (Breach of Implied Warranty of Merchantability) and Count V (Breach of Implied Warranty of Fitness for a Particular Purpose) of the FAC. All three defendants argued that the Library Fireplace's instruction manual effectively excluded or disclaimed one or both of the implied warranties. Whether the provisions in the instruction manual operate to exclude or disclaim the implied warranty of merchantability or the implied warranty of fitness for a particular purpose is a question of law for a court. Va. Code § 8.1A-201(10); *Armco, Inc. v. New Horizon Dev. Co.*, 229 Va. 561 (1985). Thus, this Memorandum Opinion sets forth in greater detail the reasons that the provisions in the fireplace instruction manual do not exclude or disclaim either implied warranty as a matter of law.

### A.

Virginia law makes clear that the implied warranty of merchantability and the implied warranty of fitness for a particular purpose can be excluded, disclaimed, or modified through the parties' contractual agreement. *See* Va. Code § 8.2-316. In this respect, Virginia law further makes clear that these implied warranties may be excluded, disclaimed, or modified provided

that the provision is in writing and "conspicuous" within the meaning of the statute.[3] As the statute further clarifies, a term is "conspicuous" when "a reasonable person against whom it is to operate ought to have noticed it." Va. Code § 8.1A-201(10). This occurs, according to the statute, when, for example, "a heading [is] in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size." Va. Code § 8.1A-201(10)(A). Finally, the statute and the cases make clear that whether a provision is "conspicuous" is a question of law for a court. Va. Code § 8.1A-201(10); *Armco, Inc. v. New Horizon Dev. Co.*, 229 Va. 561 (1985).

Here, the "CONDITIONS AND LIMITATIONS" section on the "WARRANTY" page of the Library Fireplace instruction manual states:

> The warranty defines the obligations and liability of NAPOLEON with respect to the NAPOLEON gas appliance and any other warranties expressed or implied with respect to this product, its components or accessories are excluded.

Dkt. 18-2, at 60. Whether this provision excludes or disclaims the implied warranty of merchantability is easily answered. In this respect, Virginia law makes unmistakably clear that any attempt to exclude an implied warranty of merchantability is ineffective if the exclusion provision does not specifically mention "merchantability." *See* Va. Code § 8.2-316(2). Precisely this occurred here; nowhere in the fireplace instruction manual, or in any other writing between the parties, is there an explicit reference to "merchantability." Thus, the defendants have not effectively excluded or disclaimed the implied warranty of merchantability in this case.

There is, moreover, a further reason why the implied warranty of merchantability has not

---

[3] *See* Va. Code § 8.2-316(2) ("to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face thereof.'").

4

been effectively excluded or disclaimed in this case, and this further reason is also why the implied warranty of fitness for a particular purpose has not been effectively excluded or disclaimed. Both implied warranties have not been effectively excluded or disclaimed because the disclaimer provisions in the fireplace instruction manual are not "conspicuous" within the meaning of the statute.

Decisions applying Virginia law make clear that the disclaimer provision in the fireplace instruction manual is not "conspicuous" within the meaning of the statute and is therefore ineffective. For example, the Fourth Circuit, interpreting Virginia law in *Matthews v. Ford Motor Co.*, found that a clause in small type buried among eighteen other numbered paragraphs was not "conspicuous" within the meaning of the statute. *Matthews v. Ford Motor Co.*, 479 F.2d 399, 403 (4th Cir. 1973). Similarly, the single sentence disclaimer provision at issue here appears as the tenth of twenty unnumbered statements, contained within a box titled "CONDITIONS AND LIMITATIONS" that takes up over half a page. The location of the exclusion provision in the middle of this long list of condition and limitations, and the fact that the exclusion provision is in the same small font as the rest of the twenty statements, detract significantly from the argument that the exclusion provision is "conspicuous" within the meaning of the statute.

Moreover, the "CONDITIONS AND LIMITATIONS" subsection, within which the disclaimer provision is located, is not even listed in the fireplace instruction manual table of contents, which further weakens the conspicuousness calculation. Bromwell's argument to the contrary, that the bolded "WARRANTY" section heading, which does appear in the table of contents and under which the "CONDITIONS AND LIMITATIONS" subsection is located, alerts the reader to statements that limit the scope of any implied warranties, is not persuasive. Although the "WARRANTY" section heading does appear in the table of contents, the heading

itself does not mention any limitations, and the heading is not stylistically different from the other table of contents' headings, which reduces the possibility that any reasonable person would have noticed it. *See Benedict v. Hankook Tire Co. Ltd.*, 295 F. Supp. 3d 632, 658-59 (E.D. Va. 2018) (finding that a disclaimer provision in a tire catalogue was not "conspicuous" within the meaning of the statute because the disclaimer provision was not stylistically different from other table of contents' entries). The court in *Hankook Tire Co.* also found that a disclaimer provision in a tire catalogue was not "conspicuous" within the meaning of the statute because the catalogue did not require the purchaser to sign the catalogue or otherwise become aware that his or her legal rights could be affected by the catalogue's final pages. *Id.* at 659. Here too, the disclaimer provision is located on page 60 of a 62-page fireplace instruction manual, a document "that does not, on its own, invite a purchaser to review its terms" or require a signature. *Id.* That the disclaimer provision is situated at the end of a lengthy instruction manual, a document that a buyer typically does not review prior to purchasing an item, weighs heavily against a finding that the disclaimer provision is "conspicuous" within the meaning of the statute.

Finally, the language of the disclaimer clause in the fireplace instruction manual "is neither stylized nor sized in any way that distinguishes it from the other text in the document." *Id.*; *see also Lacks v. Bottled Gas Corp. of Va.*, 215 Va. 94, 96 (1974) (holding a disclaimer was not "conspicuous" within the meaning of the statute where "the language of disclaimer [wa]s in print of the same size, style, and color as that used in most of the other provisions of the contract" and it was "immersed in the body of the contract"). Bromwell's argument to the contrary is not persuasive because although the title of the "CONDITIONS AND LIMITATIONS" subsection is in a larger font, bold, and in all caps, the heading itself does not adequately alert the reader to the disclaimer of implied warranties located in the middle of the

twenty statements below the heading. *See Goodrich Corp. v. BaySys Techs., LLC*, 873 F. Supp. 2d 736, 745 (E.D. Va. 2012) (finding that a disclaimer was not "conspicuous" within the meaning of the statute where the heading of the section in which the disclaimer appeared was bolded, but the disclaimer "was contained within the sixth paragraph of a seven paragraph section on warranties" and "was not in any different size, color, or font than the rest of the warranty provisions"); *see also Hoffman v. Daimler Trucks N. Am., LLC*, 940 F. Supp. 2d 347, 356 (W.D. Va. 2013) (finding that a disclaimer was not "conspicuous" within the meaning of the statute where "the disclaimer clause is not set off from the other paragraphs...in any distinctive way"). Accordingly, the instruction manual's disclaimer provision is not "conspicuous" within the meaning of the statute and thus is ineffective to exclude or disclaim either of the implied warranties.

**B.**

The Wolf Steel entities, seeking to avoid the conclusion that the disclaimer provision is ineffective and thus that plaintiff's breach of implied warranty claims survive the motion to dismiss, argue that plaintiff cannot maintain claims for breach of both an express and implied warranty at the same time. In support of their argument, the Wolf Steel entities cite to a Western District of Virginia case, which states that: "express warranties only preclude implied warranties where they contain the same subject matter and thus may conflict." *Fournier Furniture, Inc. v. Waltz-Holst Blow Pipe Co.*, 980 F. Supp. 187, 190 (W.D. Va. 1997) (citing *Southern Biscuit Co. v. Lloyd*, 174 Va. 299, 311 (1940)). The *Fournier Furniture* case, however, directly contradicts the Wolf Steel entities' argument. There, the court found that the defendant's argument that the plaintiff "cannot claim both implied and express warranties is incorrect" because neither party alleged that the implied warranties conflicted with the express warranty in the case. *Id.* Here, as

in *Fournier Furniture*, no party has asserted, nor is there any basis to assert, that the express warranty and the implied warranties conflict.

Moreover, the Virginia Code expressly states that express and implied warranties must be construed as cumulative to the extent reasonable. Specifically, Va. Code § 8.2-317 states that "warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant." Va. Code § 8.2-317. Subsection (c) of that provision goes on to state that "express warranties displace inconsistent implied warranties *other than* an implied warranty of fitness for a particular purpose." *Id.* (emphasis added). Thus, the express warranty in the fireplace instruction manual does not operate to preclude the breach of implied warranty claims absent some showing—that has not been made in this case—that the express and implied warranties are in conflict.

## C.

Bromwell's, also seeking to avoid the conclusion that the disclaimer provision is ineffective and thus that plaintiff's breach of implied warranty claims survive the motion to dismiss, argues that plaintiff, by supplying Bromwell's with precise and complete specifications regarding the fireplaces plaintiff wanted, effectively excluded from the contract any implied warranties. To support their argument, Bromwell's cites to Virginia Code § 8.2-316, cmt. 9, which states "where the buyer gives detailed specifications as to the goods, neither of the implied warranties as to quality will normally apply to the transaction unless consistent with the specifications." Va. Code § 8.2-316, cmt. 9. Bromwell's argues such specifications appear on the bill of sale for the fireplaces, which plaintiff attached to his FAC as Exhibit 1.[4]

---

[4] Because the bill of sale was attached to plaintiff's FAC, it is considered part of the complaint. *See* Fed. R. Civ. P.

8

More specifically, Bromwell's contends that the bill of sale establishes that plaintiff's order for fireplaces was a "special order" because the bill of sale (i) included requests for different style fronts (one stainless and one black) and for extra river rocks, (ii) included that the fireplaces would be shipped to the Bahamas, and (iii) contained language that "all sales of merchandise not immediately available are special orders." As plaintiff correctly counters, these minor, facial differences are not the type of technical specifications sufficient to exclude or disclaim the implied warranties as to quality.

The case Bromwell's relies upon to support their argument, *Air Techniques, Inc. v. Calgon Carbon Corp.*, contrasts significantly with the facts here. 1995 WL 29018, at *4 (4th Cir. Jan. 26, 1995). In *Air Technique*, the Fourth Circuit found that the implied warranty of fitness for a particular purpose did not apply where the contract required carbon meeting specific technical specifications, the seller's carbon met those technical specifications, but the buyer claimed the seller ought to have met other, more stringent, carbon grade specifications. *Id.* at *3-*4. There, the issue was whether a carbon grade specification outside the express warranty in the contract had to be met, in addition to the carbon grade specifications in the contract. *Id.* Here, plaintiff's requests as to the aesthetic appearance of the fireplaces have no relation to the express warranty that the fireplace will operate as a fireplace without defective components. Plaintiff's specifications for the fireplaces' appearance were secondary expectations, which were subordinate to plaintiff's primary expectation that both fireplaces safely operate as fireplaces.

Moreover, Va. Code § 8.2-316 cmt. 9, pertaining to the effect of detailed buyer specifications on the implied warranties, is inapplicable here because that comment only references specifications that are inconsistent with the implied warranties. Here, plaintiff's

---

10(c) (a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

specifications are not inconsistent with either implied warranty. In this case, the implied warranties provide assurance that the Library Fireplace was safe for use as a fireplace in plaintiff's home. There is no reason that the Library Fireplace could not operate safely as a fireplace in plaintiff's home *and* have a black front or extra river rocks. In other words, the implied warranties are consistent with plaintiff's specifications for the appearance of the fireplace. Accordingly, Bromwell's motion to dismiss the breach of implied warranty claims based on the specificity of plaintiff's fireplace order was denied.

In sum, the express warranty in the fireplace instruction manual does not disclaim either implied warranty, as the disclaimer is not "conspicuous" within the meaning of the statute and does not mention "merchantability" as required by the Virginia Code. *See* Va. Code § 8.2-316(2). Moreover, pursuant to the Virginia Code, plaintiff can pursue claims for breach of express and implied warranties at the same time because the warranties are to be construed as cumulative to the extent reasonable. *See* Va. Code § 8.2-317. And finally, the minimal design specifications made in the bill of sale for the fireplaces are consistent with the implied warranties as to the fireplace's quality, and thus do not disclaim them. Accordingly, all three defendants' motions to dismiss Count IV and Count V were properly denied by the November 12, 2019 Order; both the breach of the implied warranty of merchantability claim and the breach of the implied warranty of fitness for a particular purpose claim survive the motions to dismiss.

### III.

The November 12, 2019 Order granted the Wolf Steel entities' motion to dismiss Bromwell's cross-claim on the ground that it did not state sufficient facts to allege a valid cross-claim and provided Bromwell's leave to amend its cross-claim. Bromwell's filed an amended cross-claim against the Wolf Steel entities on November 19, 2019, as they were entitled to do

pursuant to the November 12, 2019 Order. *See* Dkt. 62.

The factual allegations in Bromwell's initial cross-claim, which was dismissed without prejudice by the November 12, 2019 Order, consisted of four sentences which stated, in a conclusory manner, that the Wolf Steel entities, and not Bromwell's, manufactured the Library Fireplace, and thus that Bromwell's was entitled to indemnification or contribution. The cross-claim alleged that if the Library Fireplace was defectively manufactured and caused any damage to plaintiff, that damage was caused by the Wolf Steel entities, and not by Bromwell's. The dismissal of Bromwell's cross-claim was occasioned by its lack of specificity in its blanket claim for indemnification or contribution as to all counts in plaintiff's FAC.

More specifically, although there is no doubt that Virginia law recognizes a claim for indemnification in implied warranty cases,[5] plaintiff's FAC also alleges a negligent failure to warn claim against Bromwell's, the basis of which is Bromwell's advice to plaintiff regarding plaintiff's reported issues with the Library Fireplace. During these phone calls between Bromwell's and plaintiff, the FAC alleges that Bromwell's never informed plaintiff to stop using the Library Fireplace. Thus, although Bromwell's may have committed "passive" negligence by failing to discover a manufacturing defect with respect to the breach of implied warranty claims, Bromwell's may have committed "active" negligence through Bromwell's failure to warn plaintiff to discontinue use of the Library Fireplace in response to plaintiff's reported issues. *See Williams v. United States*, 469 F. Supp. 2d 339, 342 (E.D. Va. 2007) (indemnification is only proper when the indemnitee has committed "passive" negligence). Accordingly, Bromwell's

---

[5] *See Carr v. The Home Ins. Co.*, 250 Va. 427, 429 (1995) ("equitable indemnification arises when a party[,] without personal fault, is nevertheless legally liable for damages caused by the negligence of another"); *see also White v. Johns–Manville Corp.*, 662 F.2d 243, 249 (4th Cir. 1981) (Equitable indemnification is "allowed where the indemnitee has without fault or only through passive negligence failed to discover...a defect in products created or supplied by the [actively negligent] indemnitor.").

11

blanket cross-claim for indemnity or contribution from the Wolf Steel entities across all plaintiff's claims against Bromwell's was dismissed without prejudice.

In sum, Bromwell's initial cross-claim was properly dismissed without prejudice by the November 12, 2019 Order because of its failure to state sufficient facts to allege a valid cross-claim—namely, the cross-claim's blanket allegation of a right to indemnification or contribution from the Wolf Steel entities with respect to all counts in plaintiff's FAC was insufficient to survive a motion to dismiss. Bromwell's has since filed an amended cross-claim, which seeks to address the deficiencies in their initial cross-claim. This Memorandum Opinion does not address Bromwell's amended cross-claim; it only addresses the reasons that Bromwell's initial cross-claim was dismissed without prejudice.

## IV.

The November 12, 2019 Order denied defendants' motion to dismiss Count IV (Breach of Implied Warranty of Merchantability) and Count V (Breach of Implied Warranty of Fitness for a Particular Purpose) of plaintiff's FAC and granted the Wolf Steel entities' motion to dismiss Bromwell's cross-claim. This Memorandum Opinion merely discusses in greater detail the reasons underlying the earlier Order with respect to these two issues. It does not alter the November 12, 2019 Order in any way.

The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
December 2, 2019

/s/
T. S. Ellis, III
United States District Judge